# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TERRY FOSTER,

                *Plaintiff,*

      v.

PHILADELPHIA CORRECTIONS
OFFICER DEXTER GRAY-HARRIDAY, *et al.*

                *Defendants.*

CIVIL ACTION
NO. 18-00114

**Pappert, J.**                                        **September 17, 2018**

## MEMORANDUM

While an inmate at the Curran-Fromhold Correctional Facility in Philadelphia, Terry Foster was allegedly assaulted by a group of corrections officers. Foster sued the officers, Dexter Gray-Harriday, Tiana Crump, Clifford Jeudy, Al-Hakim Lewis, Alisha Lewis, as well as Warden Gerald May, Deputy Warden Frederick Abello, Philadelphia Prison System Commissioner Blanche Carney and the City of Philadelphia.

Foster filed his original complaint on January 10, 2018. (ECF No. 1) He amended his pleading on January 23, 2018 and asserted claims under 28 U.S.C. § 1983 and Pennsylvania state law, specifically: he alleged against the corrections officers claims for excessive force (Count I); false arrest (Count II); assault and battery (Count III); false imprisonment (Count IV); intentional infliction of emotional distress (Count VI) and conspiracy (Count VII). He asserted claims for failure to investigate, train, supervise and/or discipline as well as cruel and unusual punishment for failure to

1

provide adequate medical treatment against all Defendants (Counts V and VIII). (ECF No. 10)

Defendants filed their Motion to Dismiss several of the claims against them for failure to state a claim under Rule 12(b)(6). (ECF No. 14.) Gray-Harriday and Crump moved to dismiss Counts II, IV, V, VII, and VIII, while the other Defendants moved to dismiss all counts. (ECF No. 14.) In response, Foster voluntarily dismissed Counts II and IV alleging false arrest and false imprisonment. (Resp. Opp. at 3, ECF No. 16.) The Court now grants the Defendants' Motion as to all remaining counts but will allow Foster a final opportunity to amend his Complaint again, consistent with this Memorandum.

I

In January of 2016, Foster was an inmate at CFCF. (Am. Compl. at ¶ 22, ECF No. 10.) He alleges that Gray-Harriday and Crump, along with other John and Jane Doe defendants, attacked him "suddenly and without provocation or justification." (*Id.* at ¶¶ 22, 25, 26.) At one point, Gray-Harriday removed the keys from his belt and handed them to Crump before allegedly beating, kicking and punching Foster. (*Id.* at ¶¶ 24–25.) After the officers handcuffed Foster, Crump sprayed Foster's face and neck with pepper spray. (*Id.* at ¶ 28.)

Foster was subsequently taken to the hospital, where he was treated for his injuries. (*Id.* at ¶¶ 29–30.) Upon release from the hospital, Foster was placed "in the hole," where he remained until March 6, 2016. (*Id.* at ¶¶ 31–32.) As a result of the alleged beating, Foster lost several teeth and suffered a concussion, facial bruising, lacerations and injuries to his neck and back. (*Id.* at ¶ 33.) Foster still suffers from

headaches and alleges that he was never provided with adequate dental treatment for his missing teeth. (*Id.* at ¶¶ 33–34.)

## II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

To establish a *prima facie* case under § 1983, Foster must first demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Foster must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. Cal.*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

A

To the extent Foster asserts claims against Officers Jeudy, Al-Hakim Lewis and Alisha Lewis, they are dismissed without prejudice. Foster has failed to allege facts linking any of them to the alleged conduct. In the Amended Complaint, Foster only references these officers in two places. First, he states that they were employed by the Philadelphia Prison System and the City of Philadelphia. *See* (Am. Compl. at ¶¶ 8–10). Second, Foster defines "Defendant Corrections Officers" to include Officers Jeudy, Al-Hakim Lewis and Alisha Lewis." (*Id.* at ¶ 15.) He never claims that Jeudy, Al-Hakim Lewis or Alisha Lewis were present at the time of the alleged assault or that they were involved in the incident at all.

B

The court analyzes Foster's claim against the City for failure to investigate, train, supervise and/or discipline (Count V) under the standard for municipal liability set forth in *Monell v. Dep't of Soc. Servs. of City of N.Y.* 436 U.S. 658 (1978). Generally,

a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Instead, a municipality can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658).

Accordingly, a successful *Monell* claim must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. A policy "is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews*, 895 F.2d at 1480 (citation and quotation omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (citation and quotation omitted).

Failure to train, investigate and discipline claims "are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for the purposes of failure to train." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Without a pattern of past violations, a plaintiff can go forward on a single violation theory if he can "show both contemporaneous knowledge of the offending incident . . .

and circumstances under which [a municipal] supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3d Cir. 1997)).

Foster brings a number of "failure to" claims, purportedly under the pattern of violations as well as the single violation theories. Foster claims that "[i]t was the policy and/or custom of the City of Philadelphia and/or the Philadelphia prison system to inadequately and improperly investigate acts of misconduct by its officers . . . such that these acts of misconduct were tolerated and known by the City of Philadelphia[.]" (Am. Compl. at ¶ 52) Foster further contends "[i]t was the policy and/or custom of the City of Philadelphia and/or the Philadelphia Prison System to inadequately supervise, discipline and train its corrections officers, including the Corrections Officer Defendants, thereby failing to adequately discourage further constitutional violations[.]" (*Id.* at ¶ 54)

Foster fails to state a claim under *Monell*. To support his pattern of violations claim, Foster points to "numerous complaints, both informal and formal, that have been brought against some if not all of the named individual Defendants, as well as other Philadelphia Prison System Corrections Officers[.]" (*Id.* at ¶ 53) Yet Foster fails to provide any facts to support these claims in his Amended Complaint. In his Response to Defendants' Motion, Foster cites one instance of an assault that took place in the prison involving a corrections officer, Larry Levy, who is not involved with the present case. (Resp. Opp. at 6) A deficient policy or custom must be established "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so

*well-settled* and *permanent* as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (emphasis added). Moreover, a single offense by a lower level employee "does not suffice to establish either an official policy or a custom." *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989) (citation omitted).

Foster also fails to adequately allege deliberate indifference under a single violation theory. In order to meet this theory's comparatively higher burden, Foster must allege "sufficient factual matter" showing (1) that the City had contemporaneous knowledge of the incident and (2) circumstances where the City's action or inaction could be found to have communicated a message of approval. *Montgomery*, 159 F.3d at 127. Foster asserts no facts showing that the City had contemporaneous knowledge of the alleged assault. He has also failed to allege any action or inaction by the City that could be interpreted as its approval of the alleged assault.

C

Foster also asserts the same "failure to" claims against Deputy Warden Abello, Warden May and Commissioner Carney in their individual and official capacities. "Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law." *Helm v. Palo*, No. 14-6528, 2015 WL 437661, at *9 (E.D. Pa. Feb. 3, 2015) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Official capacity suits, however, are just another way of pleading an action against an entity of which an officer is an agent." *Id.*; *see also Monell*, 436 U.S. at 690. Therefore, if "the governmental entity receives notice of the suit and an opportunity to respond to it, an official-capacity suit is, in all respects, to be treated as a suit against the government entity itself." *Id.* (citing *Graham*, 473 U.S. at

166).  Because Foster sued the City of Philadelphia, his claims against Abello, May and Carney in their official capacities are redundant.

Foster's claims against them in their individual capacities fail because he does not allege that they were personally involved in the alleged constitutional violations. *See Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003). The Third Circuit Court of Appeals has articulated two theories of supervisory liability under § 1983.  Foster can allege such personal involvement by showing either: (1) a supervisor's personal direction or actual knowledge and acquiescence in a constitutional violation, *id*. (quoting *Evancho v. Fisher*, 423 F.3d 347, 352 (3d Cir. 2005)); or (2) that a defendant, in his role as policymaker, acted with deliberate indifference in establishing a policy that directly caused the alleged constitutional violation.  *Brown v. May*, No. 16-01873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

Foster does neither.  The sparse and largely conclusory allegations in Foster's Amended Complaint fail to state a plausible claim against Abello, May, and Carney. Foster has failed to allege any involvement or deliberate indifference on the part of these individuals such that they can be held personally liable for Foster's claimed harm.

For the first theory of liability, other than naming Abello, May and Carney as defendants, Foster has failed to allege facts sufficient to show that they were directly involved in the alleged conduct.  "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity," *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988), and Foster fails to do so.

To prove liability under the deliberate indifference theory, Foster must identify "a supervisory policy or practice [Abello, May and Carney] failed to employ, and then

provide that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was created by the failure to implement the supervisory practice or procedure." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *Brown v. Muhlenberg Twp.*, 269 F.3d 205 (3d Cir. 2001).

Foster fails to allege sufficient facts that Deputy Warden Abello, Warden May and Commissioner Carney were policymakers who acted with deliberate indifference. Foster simply parrots the standard, arguing that Carney "was aware of the unconstitutional policy or custom regarding inadequate training, supervision and discipline of corrections officers who had committed assaults and used unwarranted and excessive force on inmates in the past," (Am. Compl. at 10) and that May and Abello "knew or should have known that Corrections Officer Defendants had a history of similarly violent behavior towards inmates, in violation of inmates' Constitutional rights." (*Id*. at 11–12.)

IV

Foster's claims against all defendants for failure to provide adequate medical treatment, (Am. Compl. at 13–14) are also dismissed without prejudice. "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Accordingly, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v.*

*Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). To establish an Eighth Amendment claim for inadequate medical care, Foster must show (1) that the Defendants were deliberately indifferent to his medical needs and (2) that those needs were serious. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

Deliberate indifference "requires obduracy and wantonness . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Id*. The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Id*. (citations omitted).

The deliberate indifference analysis, however, differs when the defendant is a non-medical prison official. *See Donnell v. Corr. Health Servs., Inc.*, 405 F. App'x 617, 622 (3d Cir. 2010). The Third Circuit has stated that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). "Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff." *Spencer v. Courtier*, 552 F. App'x 121, 124 (3d Cir. 2014) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)). In *Spruill*, the Third Circuit affirmed dismissal of claims against a non-medical defendant, stating that such an official is not chargeable with the Eighth Amendment scienter requirement of

deliberate indifference "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill*, 372 F.3d at 236.

Foster fails to state a claim that the corrections officers acted with deliberate indifference to his medical needs. He does not contend that he was denied medical care for his injuries, as the officers took Foster to the hospital following the alleged incident. Instead, Foster's real grievance is that he returned to prison with missing teeth. His Amended Complaint fails to allege any facts which show the corrections officers knew of or disregarded his medical needs for his teeth nor does the complaint allege that Foster made the officers aware of his medical issues after he returned from the hospital. Furthermore, there was no reason for the officers to believe that the doctors failed to treat the injuries to Foster's mouth. These allegations, without more, fail to show deliberate indifference required for allegations of failure to provide adequate medical care.[1]

Foster also seeks to hold the City liable under *Monell* and officials Abello, May, and Carney liable as supervisors for failure to provide adequate medical care. Because Foster failed to plead a constitutional violation for this claim, Foster's claims against the City, Abello, May and Carney for failure to provide adequate medical care are also dismissed without prejudice.

---

[1]     In any event, it is questionable if Foster can show that his medical needs were serious. He alleges that he was not provided with "adequate dental care, forcing Plaintiff to live with missing teeth." (Am. Comp. at ¶ 73) It is not clear that lack of teeth, on its own, is sufficient to show a serious medical need under the Eighth Amendment. *See Burrell v. Green*, No. CV 17-0439, 2017 WL 2691976, at *4 (E.D. Pa. 2017).

V

Foster's false arrest and false imprisonment claims are dismissed with prejudice. In his Response to Defendants' Motion to Dismiss, Foster states that "Plaintiff does not contest dismissal of Count II and IV, the false arrest and false imprisonment claims." (Resp. Opp. at 3)

VI

Foster also asserts a claim for conspiracy under state law,[2] which is dismissed without prejudice. Under Pennsylvania law, "to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).

While Foster conclusorily alleges that the corrections officers conspired to beat him, he has not alleged any facts from which the Court can infer a "combination of two or more persons acting with a common purpose to do an unlawful act[.]" *Gen. Refractories* 337 F.3d at 313. "The mere fact that two or more persons . . . happen to do that thing at the same time is not by itself an actionable conspiracy." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 212 (1979). The only facts asserted by Foster in support of his conspiracy claim are that Officer Gray-Harriday removed keys from his

---

[2]     In the Amended Complaint, Foster alleges a state law conspiracy claim. However, in the Response to the Motion to Dismiss, he relies on cases pertaining to conspiracy claims under § 1983. While the standards are slightly different, the reasoning here is equally applicable for both Pennsylvania civil conspiracy claims and § 1983 constitutional conspiracy claims.

belt and handed them to Officer Crump before beating Foster and that multiple officers joined in on the attack. (Am. Comp. at ¶¶ 24, 26) Such facts are insufficient to show combination or agreement among the officers.

## VII

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston*, 363 F.3d at 235; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Under Federal Rule of Civil Procedure 15(a), "courts may grant…amendments 'when justice so requires.'" *Frasher v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)). Moreover, the Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), a plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the plaintiff has not moved to amend the complaint. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Foster previously amended his complaint as of right, and while he has not sought leave to amend his complaint again, Foster is free to do so on or before October 9, 2018. An appropriate order follows.

BY THE COURT:

**_/s/ Gerald J. Pappert_**
GERALD J. PAPPERT, J.