# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TERRY FOSTER,** *Plaintiff,* | **CIVIL ACTION** |
| v. | **No. 18-114** |
| **PHILADELPHIA CORRECTIONS OFFICER SGT. CLIFFORD JEUDY,** et. al., *Defendants.* | |

## MEMORANDUM

### I. INTRODUCTION

On January 10, 2018, Plaintiff filed his original Complaint in this matter. ECF No. 1. On January 23, 2018, Plaintiff amended his pleadings. ECF No. 10. On April 4, 2018, Defendants, the City of Philadelphia, Frederick Abello, Gerald May, Blanche Carney, Alisha Lewis, Al-Hakim Lewis, Clifford Jeudy, Dexter Gray-Harriday, and Tina Crump filed a motion to dismiss for failure to state a claim. ECF No. 14. Judge Pappert granted Defendants' first motion to dismiss on September 17, 2018. ECF No. 17; ECF No. 18. Judge Pappert allowed Plaintiff an opportunity to amend his Complaint and on October 9, 2018, Plaintiff filed his Second Amended Complaint. ECF No. 19. Currently before the Court is the Defendants' Partial Motion to Dismiss for Failure to State a Claim (ECF No. 20) and Plaintiff's Response thereto (ECF No. 21).

1

## II. BACKGROUND

The following factual background is taken from Judge Pappert's Memorandum granting Defendants' original motion to dismiss.

> In January of 2016, Foster was an inmate at CFCF [Curran-Fromhold Correctional Facility]. (Am. Compl. at ¶ 22, ECF No. 10.) He alleges that Gray-Harriday and Crump, along with other John and Jane Doe defendants, attacked him "suddenly and without provocation or justification." (Id. at ¶¶ 22, 25, 26.) At one point, Gray-Harriday removed the keys from his belt and handed them to Crump before allegedly beating, kicking and punching Foster. (Id. at ¶¶ 24–25.) After the officers handcuffed Foster, Crump sprayed Foster's face and neck with pepper spray. (Id. at ¶ 28.)
>
> Foster was subsequently taken to the hospital, where he was treated for his injuries. (Id. at ¶¶ 29–30.) Upon release from the hospital, Foster was placed "in the hole," where he remained until March 6, 2016. (Id. at ¶¶ 31–32.) As a result of the alleged beating, Foster lost several teeth and suffered a concussion, facial bruising, lacerations and injuries to his neck and back. (Id. at ¶ 33.) Foster still suffers from headaches and alleges that he was never provided with adequate dental treatment for his missing teeth. (Id. at ¶¶ 33–34.).

ECF No. 17 at 2-3. Plaintiff added the following factual allegations into his Second Amended Complaint.

Plaintiff alleges that on January 21, 2016, an Inmate Misconduct Report was prepared, charging Plaintiff with assaulting staff, disrespect, disturbance and rule violation for disregarding orders to return to his section. ECF No. 19 at ¶34. Specifically, the Inmate Misconduct Report stated:

> Narrative: On Thursday, January 21, 2016 I, C/O Tiana Crump PR#285077 was assigned to E Dorm for the 3pm-11pm shift. At approximately 9:35pm, inmate Terry Foster PP#691501 was returning from medication and was on E Dorm head gate talking to another inmate. I C/O Crump ordered inmate Foster to return to his housing section and he disregarded my order. As I approached inmate Foster he turned at me aggressively and started to shout at me. C/O A. Lewis pepper sprayed inmate Foster in his facial area. At that time inmate Foster began wildly swinging his hands with is fist clenched. I turned on red light switch to call for a response while C/O D. Harriday immediately intervened and struck inmate foster [sic] with a closed fist and took him to the ground. At that time compliance was gained. Sgt. C[.] Jeudy responded and had inmate Foster escorted to medical for decontamination without incident.

*Id.* This report was signed by the two individuals involved in the incident, Defendants, Crump and Harriday. *Id.* at ¶35. Plaintiff was subsequently charged with assault. *Id.*

On February 2, 2016, an Inmate Disciplinary Hearing was held and Plaintiff was found guilty of all charges. *Id.* at ¶36. On February 2, 2016, Plaintiff filed an Inmate Disciplinary Hearing Appeal, in which Plaintiff stated, in relevant part:

> How did I get found guilty of all charges, I never laid hands on any of your officers. I was assaulted, the left side of my face was bruise [sic] with a black eye? Four of my teeth was [sic] knock [sic] out, and I was taken to Temple Hospital, where they said that my teeth could not be put back in.

*Id.* The Warden affirmed the decision. *Id.* at ¶37.

3

Plaintiff then filed a grievance. *Id.* at ¶38. Lieutenant Simmons conducted an investigation into the matter and prepared a Finding of the Inmate Grievance dated February 5, 2016, which stated:

> Inmate Foster you were involved in a use of force on E Dorm because you did not follow orders by an officer. You were ordered to go to your section which you did not do. So we are trained to use whatever force is necessary to gain compliance to the rules and regulations. If you had following [sic] the officer's orders no force would have been used. Lt. did and [sic] investigation that showed all officer's [sic] involved acts [sic] in accord[ance] with PPS rules and regulations. The investigation was not forwarded for further investigation. Furthermore, you attempted to assault staff when told to go to your section.

*Id.* Internal affairs did not conduct an investigation into the matter. *Id.* at 39.

The only issue before the Court is whether Count III of Plaintiff's Second Amended Complaint should be dismissed.[1] Count III, which is against Defendant City of Philadelphia ("City"), is for failure to investigate, train, supervise and/or discipline under 42 U.S.C. §§ 1981, 1983, 1985, 1988. ECF No. 19 at 10.

### III. DISCUSSION

1. Standard of Review.

When reviewing a motion to dismiss, the Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be

---

[1] Plaintiff did not oppose Defendants' Motion to Dismiss as to Defendant Carney. ECF No. 21 at 4. Therefore, because Plaintiff represented to the Court that he is not opposing the dismissal of Defendant Carney, the claims against Defendant Carney are hereby dismissed.

4

drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955)). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 550 U.S. at 679, 129 S. Ct. 1937).

Finally, courts reviewing the sufficiency of a complaint must engage in a three-step process. First, the court "must 'take note of the elements [the] plaintiff must plead to state a claim.'" *Id.* at 787 (alterations in original) (quoting *Iqbal*, 550 U.S. at 675, 129 S. Ct. 1937). "Second, [the court] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 550 U.S. at 679, 129 S. Ct. 1937). Third, "'[w]hen

5

there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (alterations in original) (quoting *Iqbal*, 550 U.S. at 679, 129 S. Ct. 1937).

## 2. Failure to Investigation, Train, Supervise, and/or Discipline Claim against the City.

Under the municipal liability standard set forth in *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), "when execution of a government's policy or custom . . . inflicts injury . . . the government as an entity is responsible under § 1983." *Carter v. City of Philadelphia*, 181 F.3d 339, 356-57 (3d Cir. 1999) (internal quotations omitted) (quoting *Monell*, 436 U.S. at 694). Under the progeny of *Monell*, the Supreme Court in *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) further held that under § 1983, municipal liability can be had where a "city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." In order to determine whether the "deliberate indifference" requirement has been met, a three-pronged test is employed. Plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employee's mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter*, 181 F.3d at 357.

Judge Baylson, in *Eichelberger v. City of Philadelphia*, No. 17-5795, 2018 WL 2102321 (E.D. Pa. May 7, 2018), recently addressed a similar factual situation under the *City of Canton* standard. In *Eichelberger*, the plaintiff, an inmate at Curran-Fromhold Correctional Facility in Philadelphia, alleged that a defendant corrections officer assaulted and battered him, fracturing his jaw and necessitating surgical repair. *Id.* at *1. Plaintiff's complaint alleged that the wardens trained the corrections officers that it is acceptable to repeatedly punch an inmate with a closed fist and fracture his jaw whenever the inmate is in close proximity. *Id.* Plaintiff alleged that this is a policy of the City of Philadelphia. *Id.* After defendants filed their motion to dismiss, Judge Baylson denied said motion after employing the three-pronged test articulated in *Carter*. *Id.* at 4.

In the instant matter, paragraphs 34 – 40 and 55 – 58 of Plaintiff's Second Amended Complaint are allegations and facts that were not in Plaintiff's Amended Complaint. These facts allege that Defendants are trained to use "whatever force is necessary" to compel inmates to gain compliance with the rules and regulations. ECF No. 19 at ¶55. Turning to the three-pronged test under *City of Canton*, a deliberate indifference by the City can be inferred from Plaintiff's Second Amended Complaint. The Court finds Judge Baylson's analysis in *Eichelberger* to be highly persuasive and analogous to the facts of this matter.

7

As to the first element, i.e. whether City policymakers know that employees will confront a particular situation, Plaintiff alleges that Defendant Commissioner Carney "knew . . . of the unconstitutional policy or custom regarding inadequate training, supervision and discipline of corrections officers who had committed assaults and used unwarranted and excessive force on inmates in the past." ECF No. 19 at ¶59. Moreover, Plaintiff argues that Defendant Carney "knew that corrections officers would encounter inmates in hostile situations and that force would be used" and that the City is required to maintain statistics on the use of force. ECF No. 21 at 10. Plaintiff's Second Amended Complaint also contains the statement from Lieutenant Simmons in response to Plaintiff's grievance, which states that corrections officers are trained to use whatever force is necessary to gain compliance to the rules. ECF No. 19 at ¶55. Based on Plaintiff's new factual allegations, it is clear that City policymakers knew that corrections officers would encounter hostile inmates because they are trained on such situations. Accordingly, the first element is satisfied.

As to the second element, i.e. whether the situation involves a difficult choice or a history of employees mishandling, a hostile (or even a potentially hostile) inmate involves a difficult choice for a corrections officer on how to proceed, especially if the officers are trained to use whatever force necessary. Here, it is alleged that the Defendant corrections officers assaulted Plaintiff,

8

causing him to lose several teeth, suffer a concussion, facial bruising and lacerations, as well as injuries to his neck and back. *Id.* at ¶32. Therefore, the second element is satisfied.

The third element, i.e. whether the wrong choice by an employee will frequently cause deprivation of constitutional rights, is also clearly satisfied. It is clear that a poor choice by a corrections officer will cause constitutional injury to an inmate, given that unreasonable amounts of force, through any means necessary, can result in serious injury. The alleged conduct by the Defendant corrections officers is an example of such.

Therefore, under the standard of review for a motion to dismiss, Plaintiff has stated a cause of action against the City under the *City of Canton* theory.

## IV. CONCLUSION

Based on the foregoing, Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint is denied in part and granted in part. Because Plaintiff represented that he does not oppose the Motion to Dismiss as to Defendant Carney, Defendants' Motion to Dismiss as to Defendant Carney is granted and Defendant Carney is dismissed from this matter. *See generally Ray v. Reed*, 240 Fed. App'x 455 (3d Cir. 2007). Defendants' Motion to Dismiss is

denied as to the City because Plaintiff sufficiently plead municipal liability under the *City of Canton* theory. An appropriate order will follow this Memorandum.

**BY THE COURT:**

DATE: 1-29-2019

_____
**CHAD F. KENNEY, JUDGE**